UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ROGER JONES,        )<br>                     )<br>         Plaintiff,  )<br>                     )<br>     vs.             )<br>                     )   No. 1:12-cv-00290-SEB-DKL<br>UNITED STATES OF AMERICA,   )<br>UNITED STATES POSTAL SERVICE, )<br>                     )<br>         Defendants. )  | |

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS OR IN THE
ALTERNATIVE MOTION FOR SUMMARY JUDGMENT**

This cause is before the Court on Defendants' Motion to Dismiss the Amended Complaint or in the Alternative Motion for Summary Judgment [Docket No. 27], filed on June 22, 2012.  Plaintiff, Roger Jones, brings this action against Defendants, the United States of America and the United States Postal Service ("the Postal Service"), under the Federal Tort Claims Act, for damages he sustained as a passenger in an automobile involved in an accident with a vehicle being driven by an independent contractor of the Postal Service.  In his brief in response to Defendants' motion, Mr. Jones concedes that the Postal Service is not a proper defendant in this action, and thus, all claims against the Postal Service are hereby DISMISSED.  For the reasons detailed below, we GRANT the United States' Motion.

1

**Factual Background**

On June 23, 2010, at approximately 2:17 p.m., Mr. Jones was riding as a passenger in a Toyota Tacoma truck driven by Thomas Quarles. Quarles and Jones were traveling westbound on IR-70, near the 187 milepost, in Guernesy County, Ohio. On that same date and time, Mark Kohler was operating a 2010 International Eagle Prostar semi-truck with a hitched box trailer, traveling eastbound on the same stretch of highway. Mr. Kohler suddenly and without warning lost control of the semi-truck and veered across the median of IR-70 at a high rate of speed, directly colliding with the truck operated by Mr. Quarles. The collision caused both vehicles to careen off of the highway into the embankment and Mr. Quarles's truck was crushed under the weight and impact of the semi-trailer driven by Mr. Kohler. Mr. Quarles died from the injuries he incurred as a result of the collision. Mr. Jones was trapped in the Toyota Tacoma under the weight of the semi-truck until rescue workers were able to extract him from the vehicle. Mr. Jones alleges that, as a result of the collision, he continues to suffer from ongoing severe mental, emotional, and physical trauma, along with pain and treatment for his serious bodily injuries.

At the time of the collision, Mr. Kohler was an employee of Hartwig Transit, Inc. ("Hartwig"). Hartwig had previously entered into a Highway Contract Route Contract ("HCR contract"), HCR 630M3, with the Postal Service to transport United States mail between the St. Louis Processing and Distribution center to various locations throughout the country during a four year term running from July 1, 2007 to June 30, 2011. Mr. Kohler was hauling a load of the United States mail pursuant to that agreement when he

lost control of the semi-truck and collided with the vehicle in which Mr. Jones was a passenger.

The Postal Service uses independent contractors to supply mail transportation services for the United States. According to Royale Ledbetter, Postal Service Manager of Surface Transportation, these contracts are solicited at the discretion of the Postal Service when it determines that the use of contractors is in the best interests of the United States, such as when it determines the contracting to be cost-effective, fiscally prudent, or in furtherance of promoting a safer and more efficient distribution of the mail. The independent contractors who drive the bulk mail transportation routes are referred to as Highway Contract Route Suppliers ("HCR Suppliers") and the routes they drive are called Highway Contract Routes ("HCR"). HCR contracts are awarded based on a competitive process in which proposals are solicited and potential contractors submit offers to the USPS to perform the requested services. HCR Suppliers are required to comply with all applicable federal, state, and local laws as well as executive orders, rules and regulations applicable to their performance under the HRC contracts. A HCR Supplier is responsible for any costs resulting from changes to laws and regulations applicable to contract performance that may occur during the term of the contract.

As a HCR Supplier, Hartwig provided drivers and equipment to transport mail between Postal Service facilities and submitted Driver Information Sheets to the Postal Service listing the names of drivers to be used on each contract. Thus, the Hartwig employees, including Mr. Kohler, were hired by Hartwig personnel, not the Postal Service and had no contractual or employer relationship with the Postal Service.

3

However, the HRC contract contained various screening and identification requirements, including extensive background checks and a requirement that Hartwig immediately report any arrests or convictions of its hired drivers to the administrative official of the Postal Service.

Hartwig did not use Postal Service mail transportation vehicles to perform its duties under HCR 630M3. The HCR contract specifically required Hartwig to provide its own vehicles to perform the mail transportation services, including making a specific number of extra vehicles readily available to allow for required vehicle maintenance, and to perform extra trips if necessary. The vehicle specifications contained in the contract included certain types, sizes, tires, weight, axles, suspensions, wheels, amenities, ventilation, and interior design required for the equipment.

Pursuant to the contract, Hartwig was required to maintain its vehicles in a mechanically sound condition with a sign on the equipment stating, "United States Mail," and was solely responsible for all repairs to and maintenance of its equipment utilized to transport mail. The HCR contract included schedules addressing the frequency, timing, and service requirements for the drivers. HCR 630M3 specifically required Hartwig to provide and inspect safety equipment necessary to perform the contract's Statement of Work, and Hartwig's employees were responsible for ensuring that the emergency equipment on the vehicles, including the parking brakes, steering mechanism, lights, reflectors, tires, horn, windshield mirrors, and rearview mirrors, was in proper working order. Hartwig was solely liable for any loss or damage to its equipment, except to the

extent that such loss or damage was caused by a negligent act or omission of the Postal Service.

The work of the drivers hired by Hartwig, including Mr. Kohler, was assigned and supervised by Hartwig, and the Postal Service was not involved in overseeing the day-to-day duties or responsibilities of Hartwig or its employees under the HRC contract. The contract did include approximate daily start and end times for loading and unloading to ensure that the carriers would remain on a particular schedule, however. HRC 630M3 also imposed safety requirements for the drivers, such as rules regarding fatigue, illness, and impaired driving as well as instructions as to the manner in which inspection of the equipment was to be performed, loading requirements, and hours of service in which the drivers were permitted to be "on duty." The HRC contract also required that when Hartwig employees were engaged in contract operations, they were to maintain a professional appearance and meet all the standards and regulations of the Postal Service in performing their duties.

Hartwig was issued a Form 1099 annually by the Postal Service for payments received under the HRC contract as an independent contractor; the USPS did not withhold Social Security taxes from the HCR 630M3 payments made to Hartwig. Unlike employees of the Postal Service, Hartwig and its employees were not entitled to participate in or receive federal government benefits such as the Thrift Savings Plan and were also not entitled to government sponsored annual or sick leave. The Postal Service also did not provide Workman's Compensation benefits for Hartwig. Rather, Hartwig was required to pay compensation directly to its employees, including Mr. Kohler, and to

5

withhold required taxes in proper amounts for Social Security benefits for the work performed under the terms of employment.  However, HCR 630M3 did include wage determinations and figures to be implemented in the contracts for the payment of drivers as well as for the benefits drivers were to receive, including, vacation time, holidays, health and welfare, sick time, and uniform allowances.

The terms of HCR 630M3 required Hartwig to establish and continuously maintain policies of liability insurance on all motor vehicles used under the contract and to notify the USPS if insurance was cancelled or discontinued.  Hartwig maintained liability insurance through the Bauer Agency under Auto Owners Insurance Company (Policy No. 95-46182316) for the period of March 9, 2010 to March 9, 2011.  The combined single limit coverage was $1,000,000, which exceeded the coverage required by HCR 630M3.

Mr. Jones filed his complaint in this action on September 21, 2011, alleging that the United States breached its duty of care and was careless, negligent, and/or reckless in the hiring and maintaining a trip lease with Hartwig without proper verification of credentials and history; in failing to verify licenses, accident history, safety operations, carrier safety records, transport licenses, and insurance status of Hartwig and the drivers it hired; and in failing to oversee the work schedules and hours each driver was working so as to prohibit the operation of a motor vehicle by a driver with impaired alertness, fatigue, illness, or any other cause, all in violation of the FTCA.  Mr. Jones further alleges that the United States is responsible for the negligent actions of Mr. Kohler under the doctrine of *respondeat superior*.  Finally, Mr. Jones alleges that the United States is

liable under 49 C.F.R. § 392 and § 395 for violations of the common carrier regulations regarding verifications, safety, and overseeing the health of the drivers. On June 22, 2012, the United States filed the instant motion to dismiss, or, in the alternative, for summary judgment.

## Legal Analysis

### I. Standard of Review

The United States labels the instant motion a motion to dismiss or, in the alternative, a motion for summary judgment. Since Defendant has submitted materials outside the pleadings that are germane to our discussion and both parties have addressed the summary judgment standard in their briefing, we shall treat Defendant's motion as a motion for summary judgment.

As such, summary judgment is appropriate when the record shows that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding whether genuine issues of material fact exist, the court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in favor of the non-moving party. *See id.* at 255. However, neither the "mere existence of some alleged factual dispute between the parties," *id.*, 477 U.S. at 247, nor the existence of "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586

7

(1986), will defeat a motion for summary judgment. *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. The party seeking summary judgment on a claim on which the non-moving party bears the burden of proof at trial may discharge its burden by showing an absence of evidence to support the non-moving party's case. *Id.* at 325.

Summary judgment is not a substitute for a trial on the merits, nor is it a vehicle for resolving factual disputes. *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Therefore, after drawing all reasonable inferences from the facts in favor of the non-movant, if genuine doubts remain and a reasonable fact-finder could find for the party opposing the motion, summary judgment is inappropriate. *See Shields Enterprises, Inc. v. First Chicago Corp.*, 975 F.2d 1290, 1294 (7th Cir. 1992); *Wolf v. City of Fitchburg*, 870 F.2d 1327, 1330 (7th Cir. 1989). But if it is clear that a plaintiff will be unable to satisfy the legal requirements necessary to establish his or her case, summary judgment is not only appropriate, but mandated. *See Celotex*, 477 U.S. at 322; *Ziliak v. AstraZeneca LP*, 324 F.3d 518, 520 (7th Cir. 2003). Further, a failure to prove one essential element "necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

A plaintiff's self-serving statements, which are speculative or which lack a foundation of personal knowledge, and which are unsupported by specific concrete facts

8

reflected in the record, cannot preclude summary judgment. *Albiero v. City of Kankakee*, 246 F.3d 927, 933 (7th Cir. 2001); *Stagman v. Ryan*, 176 F.3d 986, 995 (7th Cir. 1999); *Slowiak v. Land O'Lakes, Inc.*, 987 F.2d 1293, 1295 (7th Cir. 1993).

## II.     The Federal Tort Claims Act

The Federal Tort Claims Act ("FTCA") embodies a limited waiver of the United States' sovereign immunity and is "the exclusive remedy for any tort claim resulting from the negligence of a government employee acting within the scope of employment." *Couch v. United States*, 694 F.3d 852, 856 (7th Cir. 2012) (citing 28 U.S.C. § 2679(b)(1). Under the FTCA, "[t]he United States shall be liable … to tort claims in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674.

Mr. Jones brings this action pursuant to the FTCA alleging that the United States is liable for the negligent actions of Mr. Kohler based on a *respondeat superior* theory and is also liable for its own negligence in the hiring and supervision of Hartwig and Hartwig's employees. We address these claims in turn below.

### A.  Claims Based Upon Theory of *Respondeat Superior*

The United States maintains that it is not liable for the alleged negligence of Hartwig (and its employee, Mr. Kohler) because Hartwig was an independent contractor rather than employee of the United States and is thus excluded under the FTCA. The FTCA's waiver of sovereign immunity applies to officers and employees of "any federal agency," but expressly excludes "any contractor with the United States." 28 U.S.C. § 2671. Whether Hartwig is a federal employee for purposes of the FTCA is a question of

federal law. *Ezekiel v. Michel*, 66 F.3d 894, 899 (7th Cir. 1995) ("This court has characterized the inquiry of determining whether one is an 'employee of the government' under the FTCA as a pure question of law and a matter of statutory interpretation.") (citations omitted). Courts generally apply the "strict control" test set forth in *Logue v. United States*, 412 U.S. 521, 527 (1973) and *United States v. Orleans*, 425 U.S. 807, 814 (1976) to distinguish between employers and independent contractors for purposes of the FTCA.[1] Under that test, "an individual's status 'depends upon the amount of governmental agency control of physical performance of the [individual's] day-to-day activities.'" *Ezekiel*, 66 F.3d at 901 (quoting *Bailor v. Salvation Army*, 51 F.3d 678, 685 (7th Cir. 1995)).

The undisputed evidence before us in this case establishes that at the time of the events at issue here Hartwig was an independent contractor and not an employee of the Postal Service. It is true that the HCR 630M3 contains various specifications and requirements that amount to standards by which Hartwig was required to deliver its services under the contract, but it is clear that the contract did not give the Postal Service the right or the discretion to control and supervise the daily operations and activities of

---

[1] Plaintiff argues that, in certain circumstances, the Seventh Circuit has found the "strict factor" test inapplicable and has instead applied a ten factor test set forth in the Restatement (Second) of Agency (1958) to determine whether an individual or entity is an employee or an independent contractor. Contrary to Plaintiff's citation, the case Plaintiff cites in support of this argument, *Monroe v. United States*, No. 04 C 7358, 2008 U.S. Dist. LEXIS 22455 (N.D. Ill. Mar. 21, 2008), is not a Seventh Circuit case, and thus, is not binding on this court. While it is true that the Seventh Circuit has ruled that the "strict factor" test to determine employee status under the FTCA is inapplicable when determining whether physicians working in federal medical facilities are federal employees, (*Quilico v. Kaplan*, 749 F.2d 480, 485 (7th Cir. 1984); *Ezekiel*, 66 F.3d at 902)), the court's reasoning was limited to that narrow factual situation, which is not the circumstance presented here.

Hartwig and its employees. It is undisputed that Hartwig, not the Postal Service, was responsible for hiring, training, paying, and supervising the drivers it hired, including Mr. Kohler. Hartwig assigned Mr. Kohler his day-to-day duties and supervised his performance in delivering the services required by the HCR contract.

Additionally, Hartwig supplied Mr. Kohler with the equipment used in performance of the contract, albeit in conformance with the contract's required specifications, and it was Hartwig and its employees who were responsible for the maintenance and upkeep of that equipment. Although the Postal Service set a schedule for loading and unloading times, there is no evidence that the daily details of Mr. Kohler's performance of the services required under the contract were controlled by the Postal Service. That control was entrusted entirely to Hartwig under the HRC contract.

In support of his claim, Mr. Jones points to certain provisions of HCR 630M3 that required Hartwig and its employees to comply with all standards and regulations of the USPS in performing their duties under the contract; to ensure the "sanctity" of the mail; to follow various procedures in performing safety inspections of the equipment; and to abide by hours of service requirements relating to "on duty" and "driving time." However, the question under the "strict control test" is not whether the government requires compliance with federal standards and safety objectives, but rather whether the government is involved in day-to-day control and supervision and has the right "to control the detailed physical performance of the contractor." *Orleans*, 425 U.S. at 814 (quoting *Logue*, 412 U.S. at 528); *accord Bailor*, 51 F.3d at 685. The requirements

contained in the HCR contract at issue here fall far short of establishing the requisite level of control necessary to confer employee status on Hartwig and its drivers.

Although the Seventh Circuit has not directly addressed this issue, our conclusion is in line with decisions by other courts that have addressed whether drivers transporting mail under HCR contracts and other such contracts are employees or independent contractors.  *See, e.g., Hines v. United States*, 60 F.3d 1442, 1446 (9th Cir. 1995) (affirming summary judgment for United States in FTCA action against the Postal Service for negligence of driver operating under mail transportation services contract because transport company was independent contractor), abrogated on other grounds by *United States v. Olson*, 546 U.S. 43 (2005); *Norton v. Murphy*, 661 F.2d 882, 885 (10th Cir. 1981) (same); *Tunder v. United States*, 522 F.2d 913, 915 (10th Cir. 1975) (same); *Fisher v. United States*, 356 F.2d 706, 708 (6th Cir. 1966) (per curiam) (same); *Lerma v. United States*, 716 F. Supp. 1294, 1297 (N.D. Cal. 1988) (same); *Duncan v. United States*, 562 F. Supp. 96, 100 (E.D. La. 1983) (same); *Thomas v. United States*, 204 F. Supp. 896, 899 (D. Vt. 1962); *see also Couch*, 694 F.3d at 859-860 (collecting cases and recognizing that the Postal Service has consistently and successfully argued that its HCR contractors are not its own employees but independent contractors for whom it bears no legal responsibility under the FTCA).  While none are binding on our decision here, we find their reasoning and analysis persuasive in informing our determination.

For the foregoing reasons, we hold that Hartwig was at the time of the tragic accident at issue here acting in all respects as an independent contractor and not an

employee of the Postal Service.  As such, Mr. Jones's claims based on a *respondeat superior* theory cannot survive.

### B.  Claims Alleging Negligent Hiring and Supervision by the Postal Service

Mr. Jones also alleges various claims based on the alleged negligent hiring and supervision of Hartwig and its employees by the Postal Service.  The United States rejoins noting that these claims are barred because they fall within the discretionary function exception of the FTCA and are thus outside the FTCA's limited waiver of the government's sovereign immunity.  "Although the FTCA's waiver of sovereign immunity is broad, Congress has excepted certain claims from its purview, including '[a]ny claim … based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.'" *Reynolds v. United States*, 549 F.3d 1108, 1112 (7th Cir. 2008) (quoting 28 U.S.C. § 2680(a)).  The purpose of this exception is to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort."  *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 814 (1984).

To come within the discretionary function exception, the alleged conduct must: (1) "involve an element of judgment or choice"; and (2) "amount to a permissible exercise of policy judgment."  *Reynolds*, 549 F.3d at 1112 (citations omitted).  Conduct is not discretionary if "a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow" because "the employee has no rightful option but to

13

adhere to the directive." *Berkovitz v. United States*, 486 U.S. 531, 536 (1988).  When assessing whether the challenged action is based on considerations of public policy, "[a]ll that matters is 'the nature of the actions taken and … whether they are susceptible to policy analysis." *Reynolds*, 549 F.3d at 1112 (quoting *United States v. Gaubert*, 499 U.S. 315, 325 (1991)).

     Here, it is undisputed that the Postal Service has the discretion to negotiate and execute contracts providing for mail transportation services, and thus, the government did not violate any specific mandatory statute, regulation, or policy in contracting with Hartwig.  *See* 39 U.S.C. § 5005(c).  With regard to Mr. Jones's claims of negligent oversight by the Postal Service, we know of no federal statute or regulation that dictates the manner in which the Postal Service is required to oversee its contractors or assure that its contractors comply with federal regulations and the provisions of the HRC contracts.  *See Alinsky v. United States*, 415 F.3d 639, 647-48 (7th Cir. 2005) (holding that such a showing is "imperative" in cases in which the plaintiff's claim is based on negligent oversight) (citing *Kirchmann v. United States*, 8 F.3d 1273, 1276 (8th Cir. 1993)).  Accordingly, it is beyond controversy that both the Postal Service's decision to hire Hartwig as well as subsequent decisions relating to the manner in which the Postal Service supervised and monitored Hartwig's performance under the contract involve elements of judgment and choice, and were not violative of any federal statute, regulation, or policy.

     We turn next to consider whether the Post Office's challenged conduct involved public policy considerations.  The evidence in the record establishes that the Postal

Service's decisions regarding whether to contract out mail transportation services and, if so, which contractors to hire are based on factors such as cost-effectiveness, fiscal prudence, and whether the use of contractors would promote safer and more efficient mail distribution. Exh. 1, ¶ 2. Judgments regarding the manner in which to allocate government resources most efficiently are quintessentially discretionary policy decisions of the sort that courts typically recognize that Congress intended to protect. *E.g., Varig Airlines*, 467 U.S. at 808.

Mr. Jones's remaining claims seek to hold the United States liable for various instances of alleged negligence in the training and oversight of Hartwig's drivers. However, the Postal Service, in its discretion, contracted out these responsibilities to Hartwig, and it is well-settled under Seventh Circuit law that such decisions are included within the discretionary function exemption. *See, e.g.*, *Alinsky*, 415 F.3d at 648 ("[T]he discretionary function exemption protects the government from liability for claims premised on the lack of training, oversight, or qualifications of [the contractor's employees], since the government acted within its discretion to contract those responsibilities out to [the contractor].") (citations omitted). Accordingly, Mr. Jones's claims based on the Postal Service's alleged negligence in the hiring and supervision of Hartwig and its drivers are barred by the discretionary function exception.

### III.   Conclusion

For the reasons detailed above, Plaintiff's claims against the United States are foreclosed by the fact that they do not fall within the FTCA's limited waiver of sovereign

immunity.  We therefore <u>GRANT</u> Defendant's Motion for Summary Judgment.  Final judgment shall enter accordingly.

    IT IS SO ORDERED.

Date:   06/07/2013

*[signature]*

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Cari L. Sheehan
LEE FAIRMAN LLP
csheehan@nleelaw.com

Nathaniel Lee
LEE FAIRMAN LLP
nlee@nleelaw.com

Ernest B Fenton
Law Office Of Ernest B. Fenton, P.C.
18300 S. Dixie Highway
2nd Floor
Homewood, IL 60430

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov

AUSA
UNITED STATES ATTORNEY'S OFFICE (NDIL)
219 South Dearborn Street
Suite 200
Chicago, IL 60604